IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANICE S. HAAGENSEN, )
       Plaintiff, )
        )
   vs )   Civil Action No. 08-1560
        )   Judge McVerry
SUPREME COURT OF PENNSYLVANIA ) Magistrate Judge Mitchell
et al., )
       Defendants. )

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion to dismiss submitted on behalf of Defendants (Docket No. 5) be granted. It is further recommended that the motion for emergency temporary restraining order submitted on behalf of Plaintiff (Docket No. 2) be dismissed as moot.

II.    Report

Plaintiff, Janice S. Haagensen, proceeding pro se,[1] brings this action pursuant to 42 U.S.C. § 1983 against Defendants, the Supreme Court of Pennsylvania, the seven justices of that court (Ronald D. Castille, Thomas G. Saylor, J. Michael Eakin, Max Baer, Debra Todd, Seamus P. McCaffery, Jane Cutler Greenspan), the Disciplinary Board of the Supreme Court of Pennsylvania, hearing panel members Matthew F. Burger, Leonard J. Marsico and Philip B. Hart, Jr., Chief Counsel Paul J. Killion, Deputy Chief Counsel Paul J. Burgoyne, Counsel Samuel F. Napoli and Secretary Elaine Bixler. Plaintiff alleges that the Disciplinary Defendants (Burger,

---

[1] Although she is proceeding pro se in this matter, Plaintiff is in fact an attorney and has filed several cases before this Court on behalf of clients, in addition to the two pending cases in which she is also the plaintiff. See Stacey v. City of Hermitage, No. 02-1911; Ferguson v. Haney, No. 98-1223.

Marsico, Hart, Killion, Burgoyne, Napoli and Bixler) improperly investigated and held that she violated the Pennsylvania Rules of Professional Conduct based on conduct that occurred in a case before this Court. After the Board's decision, she petitioned the Pennsylvania Supreme Court for review and raised her objection to the state exercising jurisdiction over alleged attorney misconduct in a federal forum. The Judicial Defendants (the Pennsylvania Supreme Court and its seven justices) reviewed the decision of the Disciplinary Board and issued an order referring the matter to the Board for the imposition of discipline on September 25, 2008. Defendant Bixler, as Secretary of the Board, sent Plaintiff a letter reflecting the Board's decision that she be required to pay the expenses of investigation and prosecution of the disciplinary matter and that, if she fails to do so, she may be transferred to inactive status.

Plaintiff seeks declaratory relief against all Defendants. She asks for a preliminary and permanent injunction "enjoining Defendants ... from enforcing the Pennsylvania Supreme Court Order of September 25, 2008, imposing sanctions upon Plaintiff-respondent, in the form of imposition of future private reprimand, and purporting to demand payment of costs, or cause and effect the Plaintiff's transfer to inactive status, thus destroying her property interest in employment." (Compl. at 24.) She also requests compensatory and punitive damages, attorney fees, costs and interest. (Compl. at 24-25.)

Presently before this Court for disposition is a motion to dismiss, submitted on behalf of all Defendants. For the reasons that follow, the motion should be granted.

Facts

Plaintiff, who is an attorney licensed to practice in the Commonwealth of Pennsylvania by the Pennsylvania Supreme Court and who is admitted to practice in this Court, the United

States District Court for the Eastern District of Pennsylvania and the United States Supreme Court, filed an action entitled Grine v. Coombs, No. 95-342E, on December 21, 1995. Her clients, Margaret M. Grine, JoAnne Grine and Robert Grine, were bringing suit under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, the Federal Water Pollution Control Act, 33 U.S.C. § 1251, and the Comprehensive Environmental Response, Compensation and Liabilities Act, 42 U.S.C. § 9601. They also brought suit against the Environmental Protection Agency and its Region III Director under the Freedom of Information Act, 5 U.S.C. § 552. (Compl. ¶¶ 15-16.)

Plaintiff indicates that the district judge wrote his last order on May 5, 2003 and that the Court of Appeals for the Third Circuit affirmed the judgment of the court (dismissing the case) on May 28, 2004. (Compl. ¶¶ 17-18.) What she does not indicate–but the Court can take notice of as matters of public record–are the following facts: 1) the district court dismissed the case with prejudice for her failure to prosecute by, inter alia, engaging in dilatory conduct for seven years and refusing to comply with case management orders and the court issued a lengthy opinion explaining the reasons for its action, see Grine v. Coombs, 214 F.R.D. 312 (W.D. Pa. 2003), aff'd mem., 98 Fed. Appx. 178 (3d Cir. 2004); and 2) the defendants subsequently requested damages pursuant to Rule 38 of the Federal Rules of Appellate Procedure and the Court of Appeals entered an order granting this request based on her filing of frivolous appeals and specifically directed Attorney Haagensen to pay these costs, Grine v. Coombs, 112 Fed. Appx. 830 (3d Cir. 2004).

She was served by the Office of Disciplinary Counsel with a Petition for Discipline filed on November 15, 2006, concerning her conduct during the Grine case and accusing her of

violating Rules of Professional Conduct 3.1 and 8.4(d). The Hearing Committee found that Disciplinary Counsel proved that Plaintiff violated specific Rules of Professional Conduct after the committee performed an "exhaustive review" of the <u>Grine</u> litigation. Plaintiff filed her answer to the petition for discipline on December 14, 2006. (Compl. ¶¶ 19-20.)

On May 30, 2007, a hearing was held by the members of the Hearing Committee. On October 30, 2007, the Committee issued an order finding Plaintiff guilty of violation of Rules of Professional Conduct 3.1 and 8.4(d). A Dispositional Hearing was conducted on December 18, 2007. (Compl. ¶¶ 21-23.)

A Report of the Hearing Committee was submitted to the Disciplinary Board of the Pennsylvania Supreme Court on February 28, 2008, recommending that Plaintiff be made subject to private reprimand by the Board. On May 22, 2008, the Board ordered that Plaintiff be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania. (Compl. ¶¶ 22-24.)

Plaintiff filed a Notice of Appeal to the Pennsylvania Supreme Court on June 6, 2008, requesting de novo review of the decision of the Disciplinary Board. In her appeal, she raised an objection to the exercise of jurisdiction by a state court in conflict with federal law. She filed a petition for review of the Disciplinary Board's order of May 22, 2008, taxing costs and expenses, on the ground that the Board lacked original or appellate jurisdiction to enforce sanctions arising out of Plaintiff's practice of law in the United States District Court for the Western District of Pennsylvania. (Compl. ¶¶ 25-26.)

Plaintiff alleges that, in its Answer to her Petition for Review, Chief Disciplinary Counsel admitted to knowledge of the fact that no federal attorney disciplinary proceeding as initiated or

4

prosecuted by the federal judiciary ever took place or was raised concerning her practice of law in a federal forum. He further stated his belief that this Court's review of the matter or lack thereof was irrelevant to the exercise of the state court's jurisdiction. On September 25, 2008, the Pennsylvania Supreme Court issued an order, referring the matter to the Disciplinary Board for imposition of a private reprimand pursuant to Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement. On October 10, 2008, a letter signed by Elaine M. Bixler enclosed a Revised Notice of Taxation of Expenses in the amount of $1,499.00 and asserted that failure to pay these expenses in thirty day would be deemed a request for transfer to inactive status, i.e., "will result in action being taken by the Board pursuant to § 93.112 of the Disciplinary Rules for the entry of an order transferring [Plaintiff] to inactive status." (Compl. ¶¶ 27-29.)

Procedural History

Plaintiff filed this action on November 10, 2008. Count I alleges that the Defendants' attempts to sanction her in a state court for alleged misconduct arising out of litigation that occurred in a federal court violated her First Amendment rights of free speech and access to the courts, as well as her Fourteenth Amendment right of due process. Count II alleges that Defendants have deprived her of her property interest in employment and violated her right to procedural due process. Count III alleges that she was subjected to an unreasonable search and seizure in violation of her rights under the Fourth Amendment. Count IV alleges that Defendants' actions violated her constitutional right to privacy, as guaranteed by the Fourteenth Amendment. Finally, Count V alleges that Defendants have violated the Supremacy Clause of the Constitution through their reliance on state law that was in conflict with the laws of the United States and in so doing they violated her right to substantive due process. On November

12, 2008, Plaintiff filed a motion for an emergency temporary restraining order.

On November 19, 2008, a motion to dismiss was filed by Defendants. They argue that: 1) the Pennsylvania Supreme Court and the Disciplinary Board as well as the individual members of these entities in their official capacities are entitled to immunity under the Eleventh Amendment; 2) state agencies and agents in the official capacities are not "persons" for purposes of § 1983; 3) all of Plaintiff's claims are barred by the Rooker-Feldman doctrine, in that they seek review of a final decision of the Pennsylvania Supreme Court and review lies in the United States Supreme Court; 4) Plaintiff's claims against the Judicial Defendants in their individual capacities is barred by the doctrine of absolute judicial immunity; 5) her claims against the individual members of the Disciplinary Board are barred by the doctrine of quasi-judicial immunity; 6) her claims against Killion, Burgoyne and Napoli are barred by the doctrine of prosecutorial immunity; 7) her individual capacity claims are barred by the doctrine of qualified immunity as to all Defendants; 8) her request for injunctive relief against the Judicial Defendants is barred by the terms of § 1983, as amended by the Federal Courts Improvement Act of 1996; 9) her contention that state courts lack jurisdiction to discipline attorneys for actions that occur in federal court has been rejected by a number of courts and the case she cites is inapposite; and 10) even if she prevailed in this case, she could not obtain attorney fees because she is representing herself.[2]

Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted must be viewed in the light most favorable to plaintiff and all well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v.

---

[2]The Court need not reach many of these arguments.

6

Gamble, 429 U.S. 97 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). See also National Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Williams, 490 U.S. at 323; Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court of Appeals has stated that:

> To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.... [In addition,] a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); see also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("a court may properly look at public records, including judicial proceedings"). Thus, the Court may cite to the record in the case of Grine v. Coombs, which is a matter of public record and is cited in the complaint, without converting the motion into a motion for summary judgment.

Section 1983 Claims

It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method

for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). In this case, the Court need not identify the rights at issue, because under any reading of the complaint, Plaintiff has failed to state a claim upon which relief could be granted.

Plaintiff points out that federal courts have authority to prescribe rules for the conduct of attorneys. This is true. See 28 U.S.C. §§ 1654, 2071(a); Fed.R.Civ.P. 83. Moreover, it is well established that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). She also notes that this Court has adopted Rules of Disciplinary Enforcement for Attorneys which include procedures such as initiation of the matter by the Chief Judge, referral of the matter to counsel for investigation and the prosecution of formal charges, ordering the respondent-attorney to show cause why discipline should not be imposed and so on. See W.D.PA.LR. 83.3.

However, the fact that these provisions exist does not support the proposition Plaintiff advances here, namely that the Supreme Court of Pennsylvania acted "without jurisdiction" when it sanctioned her for conduct that occurred in federal court. Plaintiff cites no authority in support of this conclusion and there is ample authority explicitly rejecting it. See Gadda v. Ashcroft, 377 F.3d 934 (9th Cir. 2004) (immigration attorney whose practice was solely in federal court could be disciplined for misconduct by the Supreme Court of California); In re Dennis, 188 P.3d 1, 13-14 (Kan. 2008) (Kansas Supreme Court could sanction attorney for conduct that occurred in Kansas federal court); Gillette v. Edison, 2009 WL 81919 (D.N.D. Jan. 14, 2009) (North Dakota Supreme Court could sanction attorney for conduct that occurred in a tribal proceeding); Woloohojian Realty Copr. v. Bogosian, 2008 WL 4646109, at *1 (D.R.I. Oct. 17, 2008)

(Massachusetts Board of Bar Overseers could discipline attorney for conduct that occurred in a federal court in Rhode Island); In re Soininen, 783 A.2d 619, 622 (D.C. 2001) (disciplining member of DC bar for acts committed in Virginia); Mississippi Bar v. Strauss, 601 So.2d 840, 845 (Miss. 1992) (imposing three-month suspension from practice in Mississippi because of conduct in federal court in Louisiana); Foster v. McConnell, 329 P.2d 32 (Cal. App. 1958) (noting cases where attorneys have been disciplined for acts outside the jurisdictions).

Plaintiff cites Surrick v. Killion, 449 F.3d 520 (3d Cir. 2006). In that case, the Court of Appeals held that an attorney (Surrick) who remained suspended from practice in Pennsylvania state courts but who had been reinstated to practice before the United States District Court for the Eastern District of Pennsylvania, following expiration of a reciprocal suspension, could open a law office in the state for the sole purpose of conducting federal practice. In so doing, the court held that the state's prohibition against Surrick opening this office, which was based on the Pennsylvania Supreme Court's holding in the nearly identical case of Office of Disciplinary Counsel v. Marcone, 855 A.2d 654 (Pa. 2004), was preempted by the district court's power to control admission to its bar. Specifically, the court stated that:

> it is well established that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); In re Poole, 222 F.3d 618, 620 (9th Cir.2000) ("[A]s nearly a century of Supreme Court precedent makes clear, practice before federal courts is not governed by state court rules."). This power is rooted in both statute, see 28 U.S.C. § 2071(a) ("The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business."); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); Rule 83, Federal Rules of Civil Procedure, and the inherent authority of the federal courts, Chambers, 501 U.S. at 43, 111 S.Ct. 2123 (using federal courts' control over admission to their bars as an example of an inherent power "governed not by rule or statute but by

9

> the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (citation and quotation omitted). Pursuant to its exclusive authority over members of its bar, Poole, 222 F.3d at 621, the Eastern District of Pennsylvania promulgated Rule 83.6 VII(I) of the Eastern District Rules of Civil Procedure, which expressly permits attorneys suspended from a state bar to practice before the Eastern District of Pennsylvania. It is therefore beyond dispute-and the Office of Disciplinary Counsel does not question this point-that the Commonwealth lacks the authority to prohibit Surrick from practicing law before the Eastern District of Pennsylvania. See In re Desilets, 291 F.3d [925,] 929 [(6th Cir. 2002)] (observing that although the enabling Congressional statute in Sperry expressly authorized federal authorities to determine who may practice law and 28 U.S.C. §§ 1654 & 2071 do not, this is a "distinction without a difference"); cf. United States v. Hvass, 355 U.S. 570, 575, 78 S.Ct. 501, 2 L.Ed.2d 496 (1958) (holding that rules and regulations promulgated by a district court that have been lawfully authorized and have a clear legislative base qualify as "a law of the United States," as that phrase is used in a perjury statute).

Id. at 531-32. The court noted that "the question here is not whether any federal law expressly confers the right to maintain an office, but whether the maintenance of an office is 'reasonably within the scope' of the federally-conferred license to practice law.'" Id. at 533 (quoting Sperry v. State of Florida, 373 U.S. 379, 402 n.47 (1963)).[3] The court concluded that maintenance of an office was incident to the federally-conferred license to practice law, and that the federal power preempted the Pennsylvania law barring an unlicensed attorney from maintaining a law office.

In concluding, the court observed that its holding was in conflict with that of the Pennsylvania Supreme Court. It then pointed to "three jurisprudential considerations present here that demonstrate a felicity of respect to the Pennsylvania Supreme Court." First, the court's

---

[3]In Sperry, the Supreme Court held that the State of Florida could not enjoin a local patent practitioner, who was not admitted to the State Bar of Florida, from preparing patent applications and other legal instruments that were filed solely in the United States Patent and Trademark Office. The court in Surrick explained that Sperry "stands for the general proposition that where federal law authorizes an agent to practice before a federal tribunal, the federal law preempts a state's licensing requirements to the extent that those requirements hinder or obstruct the goals of federal law." 449 F.3d at 530.

10

decision did not overrule Marcone; only the United States Supreme Court could do that. Second, the decisions of the Pennsylvania Supreme Court did not bind the Court of Appeals and similarly the Pennsylvania Supreme Court was not bound by the Court of Appeals' decisions, even on questions of federal law:

> Although consistency between state and federal courts is desirable in that it promotes respect for the law and prevents litigants from forum-shopping, there is nothing inherently offensive about two sovereigns reaching different legal conclusions. Indeed, such results were contemplated by our federal system, and neither sovereign is required to, nor expected to, yield to the other.

Id. at 535. Finally,

> recent action by the Eastern District of Pennsylvania eliminates the possibility that this will be a recurring problem. While this case was pending, the Eastern District of Pennsylvania adopted Local Rule 83.6 VII(C), which requires federal reinstatement to be held in abeyance until reinstatement to state practice has been decided.

Id. Thus, the specific situation presented in Surrick is unlikely to occur again.

Surrick is distinguishable from this case in numerous significant respects. First, the Court of Appeals did not hold that the Disciplinary Board or the Pennsylvania Supreme Court would lack jurisdiction to determine where or when Surrick could practice law. Rather, the court held only that if those authorities followed the Pennsylvania Supreme Court's decision in Marcone and precluded Surrick from opening an office to practice only in federal court, they would be in conflict with federal law and that as a result, federal law would take precedence. Second, the court's decision was based upon the existence of an actual conflict between state and federal law: "Absent conflicting federal law, the Commonwealth of Pennsylvania would be free to prohibit suspended attorneys from maintaining offices for the sole purpose of practicing before the federal courts." Id. at 534 n.6 (citing Sperry, 373 U.S. at 383).

11

The critical difference between <u>Surrick</u> and <u>Sperry</u> on the one hand and the instant case on the other is that Plaintiff has identified <u>no conflict</u> between the federal and state regulations. Moreover, she has not alleged that the Pennsylvania Supreme Court has suspended her from practicing in federal court. Indeed, she has not even alleged that she has been suspended from the practice of law in Pennsylvania state courts, only that she has been directed to pay the costs of investigation and prosecution of the disciplinary matter and that if she fails to do she may be transferred to inactive status. Rather, she points only to the existence of local rules that authorize–but do not require–disciplinary action to be taken against her for conduct committed in this Court.

Plaintiff has not even suggested the existence of a conflict between the manner in which disciplinary action would be handled differently by the Supreme Court of Pennsylvania and this Court's rules. In fact, the Local Rules of this Court (to which Plaintiff points) specifically provide that the "rules of professional conduct adopted by the court are the rules of professional conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by the state court ... and as otherwise provided by specific order of this court." W.D.PA.LR. 83.3.1(B). Moreover, the rules do not require that disciplinary proceedings be initiated in this Court before the state takes action, which is what Plaintiff implies that they say.

Therefore, this case fails to state a claim upon which relief could be granted. In addition, even assuming that the case stated a claim, all of the Defendants would have to be dismissed pursuant to various immunity doctrines, discussed briefly below.

<u>Eleventh Amendment Immunity</u>

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (internal citation omitted). The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or the issue of whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." Regents of the University of Calif. v. Doe, 519 U.S. 425, 429-30 (1997).

The Pennsylvania Supreme Court is a court entity of the Unified Judicial System of Pennsylvania and as such it is an arm of the state for Eleventh Amendment immunity purposes. See Callahan v. City of Philadelphia, 207 F.3d 668, 672 (3d Cir. 2000). The Disciplinary Board is an agency of the Unified Judicial System and is also an arm of the state for Eleventh Amendment immunity purposes. Mattas v. Supreme Court of Pa., 576 F. Supp. 1178, 1182 (W.D. Pa. 1983), cited in Callahan, 207 F.3d at 674. In addition, the individual defendants in their official capacities, are state agents who would be entitled to Eleventh Amendment immunity. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

The Court of Appeals for the Third Circuit has indicated that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits

against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. The third exception ... is the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908).

Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. 42 Pa. C.S. § 8521(b); Chittister v. Department of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000). In addition, the Supreme Courts has held that § 1983 does not abrogate states' sovereign immunity. Quern v. Jordan, 440 U.S. 332, 339-46 (1979).

With respect to the third exception, the Court of Appeals has explained that:

The theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct. The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages.

MCI Telecommunication Corp. v. Bell Atlantic-Pa., 271 F.3d 491, 506 (3d Cir. 2001) (citations omitted).

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002) (citation omitted). Plaintiff has not alleged an ongoing violation of federal law. Rather, she seeks to have an order entered that would establish that the Pennsylvania Supreme Court and its Disciplinary Board acted without jurisdiction when they sanctioned her for conduct that occurred during the Grine case in federal court. Therefore, the Eleventh Amendment applies to foreclose

14

suit against the Pennsylvania Supreme Court, the Disciplinary Board and the individuals comprising these entities acting in their official capacities.

Absolute Judicial Immunity

The Judicial Defendants argue that they are immune from any damages claims based on the doctrine of absolute judicial immunity. A judge is immune from liability for all actions taken within a judicial capacity. Mireles v. Waco, 502 U.S. 9 (1991); Forrester v. White, 484 U.S. 219, 225-27 (1988); Stump v. Sparkman, 435 U.S. 349 (1978). Further, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump, 435 U.S. at 356-57 (quoting Bradley v. Fisher, 13 Wall. 335, 351 (1872)). The Court observed that:

> In Bradley, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Id. at 357 n.7 (quoting Bradley, 13 Wall. at 352).

The Supreme Court of Pennsylvania has and exercises "the powers vested in it by the Constitution of Pennsylvania." 42 Pa. C.S. § 502. Under the Constitution of Pennsylvania, the Supreme Court is given the power to regulate the practice of law. Pa. Const. Art. V § 10(c). Furthermore, the Supreme Court reviews the findings and recommendations of the Disciplinary Board. Pa.R.D.E. 208(e). Thus, the Supreme Court has subject matter jurisdiction over attorney disciplinary proceedings.

15

Plaintiff's allegations involve judicial actions by the Justices of the Pennsylvania Supreme Court, who were acting within their authority to regulate the practice of law in Pennsylvania. Therefore, the Justices in their individual capacities were acting within their jurisdiction and are immune from Plaintiff's suit for damages.

Quasi-Judicial Immunity

The Supreme Court "has extended absolute immunity to certain others who perform functions closely associated with the judicial process." Cleavinger v. Samaar, 474 U.S. 193, 200 (1985). The Court has also recognized that "disciplinary proceeding is judicial in nature," Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 433 (1982). Thus, quasi-judicial immunity bar claims against state bar disciplinary members. See Klapper v. Guria, 582 N.Y.S.2d 892, 895 (1992); Sassower v. Mangano, 927 F. Supp. 113, 120-21 (S.D.N.Y. 1996). Furthermore, personnel who act on behalf of a judicial official are also entitled to quasi-judicial immunity for these acts. Gallas v. Supreme Court, 211 F.3d 760, 772-73 (3d Cir. 2000). Thus, the Disciplinary Board Members (Burger, Marsico and Hart) who issued a report and sat as a hearing committee for the Board, are entitled to quasi-judicial immunity and Plaintiff's suit against them cannot proceed.

Absolute Prosecutorial Immunity

The Supreme Court has held that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" is entitled to absolute immunity to suit under § 1983. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). As the Court explained more recently:

> Liberally construed, Imbler's complaint included not only a charge that the prosecution had been wrongfully commenced, but also a charge that false

> testimony had been offered as well as a charge that exculpatory evidence had been suppressed. His constitutional claims were thus broader than any specific common-law antecedent. Nevertheless, relying on common-law decisions providing prosecutors with absolute immunity from tort actions based on claims that the decision to prosecute was malicious and unsupported by probable cause, as well as from actions for defamation based on statements made during trial, we concluded that the statute should be construed to provide an analogous defense against the claims asserted by Imbler. The policy considerations that justified the common-law decisions affording absolute immunity to prosecutors when performing traditional functions applied equally to statutory claims based on the conduct of the same functions.

Kalina v. Fletcher, 522 U.S. 118, 124-25 (1997) (footnotes omitted).

Plaintiff's allegations against Killion, Burgoyne and Napoli arise out of their actions as prosecutors for the state before the Disciplinary Board; thus they are no different from those alleged in Imbler. Absolute immunity for prosecutors is a defense to an individual capacity suit. Kentucky v. Graham, 473 U.S. 159, 166-67 (1985). Therefore, Defendants Killion, Burgoyne and Napoli are entitled to absolute prosecutorial immunity from actions they took in the disciplinary proceedings and her claims against them should be dismissed.

Because Defendants' motion to dismiss should be granted, Plaintiff's motion for emergency temporary restraining order should be dismissed as moot.

For these reasons, it is recommended that the motion to dismiss submitted on behalf of defendants (Docket No. 5) be granted. It is further recommended that the motion for emergency temporary restraining order submitted on behalf of Plaintiff (Docket No. 2) be dismissed as moot.

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file

17

timely objections may constitute a waiver of any appellate rights.

        Respectfully submitted,


        s/Robert C. Mitchell
        ROBERT C. MITCHELL
        United States Magistrate Judge

Dated: January 27, 2009